1

1                    United States District Court

2              for the Southern District of California

3
                                          )
4    PETER STROJNIK, SR.,                 )
                                          )    No. 19cv0650-BAS
5          Plaintiff,                      )
                                          )    And related case
6              v.                          )    19cv1446-BAS
                                          )
7    TORREY PINES CLUB CORPORATION,        )    December 10, 2019
     et al.,                               )
8                                          )    San Diego, California
           Defendants.                     )
9

10
                        TRANSCRIPT OF PROCEEDINGS
11              BEFORE THE HONORABLE CYNTHIA BASHANT
                     United States District Judge
12
     APPEARANCES:
13
     For the Plaintiff:       PETER STROJNIK, SR.
14                            PRO SE

15   For the Defendants:      KLINEDINST PC
                              NADIA PARRA BERMUDEZ
16

17

18

19

20
     Court Reporter:          Dana Peabody, RDR, CRR
21                            District Court Clerk's Office
                              333 West Broadway, Suite 420
22                            San Diego, California 92101
                              DanaPeabodyCSR@gmail.com
23

24

25

| | |
|---|---|
| 1 | San Diego, California, December 10, 2019 |
| 2 | * * * |
| 3 | THE COURT:  Good afternoon. |
| 4 | THE CLERK:  Calling matter numbers 2 and 3, matter |
| 01:50  5 | number 2, 19cv0650, Strojnik versus Torrey Pines Club |
| 6 | Corporation, and matter Number 3, 19cv1446, Strojnik versus |
| 7 | Marla Hicks Trust, on calendar for motion hearing. |
| 8 | THE COURT:  State your appearances for the record, |
| 9 | please. |
| 01:50 10 | MR. STROJNIK:  Good afternoon, Your Honor.  My name is |
| 11 | Peter Strojnik.  I'm here as the plaintiff in both matters. |
| 12 | THE COURT:  Good afternoon. |
| 13 | MS. BERMUDEZ:  Nadia Bermudez on behalf of defendants. |
| 14 | THE COURT:  Good afternoon. |
| 01:50 15 | So I'd like to start with case Number 19cv650, which is the |
| 16 | oldest case, and kind of give you my thoughts about it, and |
| 17 | then I certainly would be interested in hearing from you. |
| 18 | First of all, with respect to the judicial notice, I don't |
| 19 | have any problem taking judicial notice of the fact that |
| 01:51 20 | certain documents were filed in the Arizona court or the fact |
| 21 | that certain statements were made in the filings, but I may not |
| 22 | take judicial notice of the truth of the statements within |
| 23 | those documents. |
| 24 | So, for example, I'm inclined to grant in part and deny in |
| 01:51 25 | part the request for judicial notice, taking judicial notice of |

1  the fact that the State Bar of Arizona filed a State Bar

2  complaint against Mr. Strojnik.  And without accepting the

3  allegations as true, I could take judicial notice of the fact

4  of what was alleged by the State Bar.

01:52  5      I also could take judicial notice of the fact that

6  plaintiff consented to disbarment, although not the truth of

7  the allegations in the State Bar complaint, and could take

8  judicial notice of the fact there was an actual disbarment.

9      However, to the extent that the defendant is requesting

01:52  10  that I take judicial notice of the allegations made by the

11  State of California in the motion to intervene, it seems to me

12  that the only relevancy of those statements is if I accept the

13  truth of the allegations.  If I just -- so I think I can take

14  judicial notice of the fact that there were a thousand actions

01:52  15  filed by the plaintiff in the State of California, that these

16  were consolidated and dismissed, but as far as what the

17  allegations were made in the motion to intervene, I don't think

18  I can.

19      So that's sort of my tentative on the judicial notice.

01:52  20      But moving on to the actual motion to declare Mr. Strojnik

21  a vexatious litigant, I think, first of all, I do have a

22  question as to whether any court has actually found him to be a

23  vexatious litigant.

24      To the extent there was inappropriate conduct in Arizona,

01:53  25  it seems like that was conduct as a lawyer, not a litigant.

1    I can look at it, I can consider it, but the fact that

2    there are multiple actions that have been filed in the past I'm

3    not sure is sufficient, and it seems to me that the allegations

4    fall into three categories:  The first category is plaintiff

01:53    5    filed this lawsuit after settling with the defendant in

6    violation of the settlement agreement.  The second allegation

7    is that plaintiff makes false allegations in his complaint and

8    claims he was disabled and when he's actually been videotaped,

9    quote, briskly walking without the need of any mobility aids.

01:53    10    And three, that he has suggested he is a lawyer when sending

11    demand letters to clients when, in fact, he has been disbarred.

12    And if those are the three allegations that rise to the

13    level of being a vexatious litigant, it seems like allegation

14    number 1 is the subject of this lawsuit.  And so until the

01:54    15    lawsuit is resolved, I'm not sure -- it seems like it's

16    premature at this point.

17    The second two allegations, I think, would require an

18    evidentiary hearing, which I'm happy to hold.  I don't think

19    that that will be resolved by this lawsuit since the underlying

01:54    20    lawsuit has been resolved at this point, but I think we could

21    do an evidentiary hearing in an afternoon where I dealt with

22    both of those two allegations as to whether Mr. Strojnik is

23    filing complaints that are false to try and get settlement

24    amounts and filing demand letters to clients representing that

01:54    25    he is a lawyer.  So we can have an evidentiary hearing on that.

1    With respect to the plaintiff's motion to dismiss the
2  counterclaims, which is ECF Number 44, I would deny that.  I
3  mean, at this point, it seems to be blatant forum shopping,
4  settling the underlying complaint for $500 to avoid litigation
01:55  5  on the counterclaim.  To the extent there's a motion to dismiss
6  the counterclaims, I would deny that motion.
7    So that's sort of my tentative framework of the first case.
8    Ms. Bermudez, would you like to be heard first since it's
9  your motion?
01:55  10    MS. BERMUDEZ:  Yes, Your Honor.  Thank you.
11    I did want to supplement the record with some recently
12  received documents from -- to our office.  The first is a
13  similar ADA case from the Central District of California, which
14  on Monday an order to dismiss was granted in the defendant's
01:55  15  favor on a very, very similar ADA complaint against a hotel.
16  One of the arguments that plaintiff has made in briefing is
17  that no cases have been dismissed or he has not had any
18  unfavorable outcomes.  This case from the Central District of
19  California, case number 2:19cv02991, there was a ruling just
01:56  20  yesterday.  I have a copy for Your Honor if I may approach with
21  a copy.
22    THE COURT:  Sure.
23    You know, the problem I have is I'm just not sure that
24  showing that he's filed hundreds of cases is sufficient.
01:56  25    MS. BERMUDEZ:  Right.  I apologize, but this case in

01:56

1  particular, what the showing is, is that he has had an

2  unfavorable outcome in a motion to dismiss on a very similar

3  case.  So when you look at the case law and the vexatious

4  litigant motion, the courts do ask for outcomes where cases

5  were dismissed to show a pattern of unsuccessful pursuit of

6  cases.

7      I think that an evidentiary hearing would be appropriate,

8  Your Honor, and I'd be happy to supplement the record in a

9  filing request for judicial notice or provide you a copy today.

01:57

10      THE COURT:  Well, it certainly seems to me that if

11  there is proof that plaintiff is filing a lawsuit making

12  allegations that are clearly untrue and receiving settlements

13  by representing that he's a lawyer and making demands, that

14  certainly, I think, would rise to the level of a vexatious

01:57

15  litigant.  So if you -- we can have an evidentiary hearing on

16  that particular issue because, I mean, I'd certainly be

17  interested in hearing from the plaintiff, but I think if that

18  is proven, then that would rise to the level of a vexatious

19  litigant.

01:57

20      MS. BERMUDEZ:  And then finally, Your Honor, on Friday

21  we also became aware of another ruling in district court.  This

22  is the Napa case.  We filed a copy of the order on Friday.  And

23  in that case, the district court ordered Mr. Strojnik to

24  prepare a report of all of his filings in California as well as

01:58

25  that particular district.  And in addition, to providing

1  information as to what extent he conducted an investigation

2  before filing these lawsuits.

3       So I provide this as an example to the Court of the type of

4  remedy that it could fashion.

01:58   5       But to conclude, Your Honor, we agree that the -- and

6  appreciate the Court's tentative to deny the motion to dismiss

7  the counterclaim and also feel that an evidentiary hearing is

8  appropriate so that Mr. Strojnik could be put under oath and be

9  asked about information contained in numerous court filings.

01:58   10           THE COURT:  Okay.  Go ahead.

11           MS. BERMUDEZ:  The state that had instituted an action

12  against Mr. Strojnik was Arizona, and I believe the Court said

13  California.  I just wanted to clarify for the record.

14           THE COURT:  No, I realize it was Arizona.  Sorry.

01:59   15       And would you agree that the first allegation -- to the

16  extent you're claiming that this is vexatious or harassing or

17  frivolous because Mr. Strojnik filed this lawsuit after

18  settling with the defendant in violation of the settlement

19  agreement, that that's still pending as part of the

01:59   20  counterclaims in this case?  So at this point, it would be

21  premature for me to rule on that basis without prejudice

22  to -- if it proves that that is the case, then we can discuss

23  it at that point.

24           MS. BERMUDEZ:  That is correct, Your Honor; however,

01:59   25  courts do look at whether or not there are viable defenses in

1    determining if the lawsuit itself is frivolous.

2        So our case is a little unique from other ADA cases where a

3    defendant moves to declare the plaintiff a vexatious litigant

4    because we actually have an articulable defense that we can

01:59    5    demonstrate to the Court immediately; and second, because of

6    the conduct of plaintiff to initiate settlement negotiations

7    basically impersonating a licensed attorney.  So these are

8    things that make our situation unique in terms of other motions

9    to declare plaintiffs who pursue ADA litigation as vexatious

02:00    10    litigants.

11            THE COURT:  Mr. Strojnik, what about an evidentiary

12    hearing?

13            MR. STROJNIK:  May I?

14            THE COURT:  You may.

02:00    15            MR. STROJNIK:  Thank you.

16        Your Honor, first of all, I want to thank you for inviting

17    me to come down here and meet with you in person.  It's always

18    good when you have a transactional matter to see the people

19    that you're dealing with, and I got a chance to meet counsel.

02:00    20    Very happy.

21        And I want to address two issues.  The first one,

22    Your Honor, is there seems to be a misunderstanding of what the

23    standard for vexatious litigant is.  I've heard counsel say

24    that if a case is unsuccessful, somehow that falls within the

02:01    25    category of vexatious litigation.  That is not a fact.

1          THE COURT:  No, and I would agree with that.

2      But would you agree that if the plaintiff can prove that

3  you're making false allegations in the complaints claiming

4  you've been disabled and that when, in fact, you're not; or

02:01    5  claiming that you're unable to access defendant's hotels from a

6  wheelchair when, in fact, you have no need for a wheelchair;

7  and representing that you're a lawyer when, in fact, you've

8  been disbarred, if they can prove all that, that would rise to

9  the level of vexatious litigant?

02:01   10          MR. STROJNIK:  Well, if they can prove that, that's

11  true, but what I've seen so far seems to completely disregard

12  the 2008 Amendment Act to the ADA.  And I want to talk briefly

13  about that.

14      As you recall, the ADA was passed in 1990, and it clearly

02:01   15  indicated that the intent of Congress was not so much as to who

16  the plaintiff is.  The intent of Congress at the time was very

17  clear.  It was to make sure that all public accommodations are

18  ADA compliant.

19      But the supreme court did not hear that heed, so in 1999,

02:02   20  the supreme court decided the Sutton case, and the Sutton case

21  severely restricted the definition of "disability" under the

22  ADA.

23      And then in 2002, they came back in the Toyota case, and

24  they even more severely restricted the application of the ADA.

02:02   25      So in 2008, Congress came in and said Sutton is overruled,

1  Toyota is overruled, and we are now passing two very clear

2  definitions of "disability."

3       Your Honor, I'm happy to sit in the chair over there and

4  tell you what they are when we have a hearing, and we can talk

02:02  5  about it, and I can bring my doctors, and I can incur expenses,

6  but this is the kind of matter that, in my opinion, could be

7  resolved by written submissions.

8       So that we all understand -- the important thing,

9  Your Honor, is that we all understand what the disability is

02:03  10  under the 2008 amendment and under 28 CFR 36106.  Actually --

11  actually, let me give you an example.  Every time that I come

12  down the freeway, I get on the freeway ramp, and I see somebody

13  who's disabled, doesn't have a leg, but he's got a little sign

14  that says help me.  The funny thing about people like

02:03  15  that -- it's not funny.  It's actually quite serious.  But the

16  serious thing like people on the freeway and in the shanty

17  towns under the freeway is they don't get to come to court very

18  often.  I'll bet you a dollar to a donut you've never seen one

19  of those in your courtroom.

02:03  20       THE COURT:  What I need to decide is whether the

21  allegations in the petition that you filed in this case are

22  clearly false because that's what the allegation is from the

23  defendants.  They're claiming that you filed allegations that

24  are false.  And if that's true, I think I can find you to be a

02:04  25  vexatious litigant.  So I think the only way I can resolve that

1   is to have an evidentiary hearing.

2           MR. STROJNIK:  Let me add something.  It is not up to

3   me under American jurisprudence to determine or to help you

4   determine that I'm innocent.  It is up to them to prove it.

02:04   5           THE COURT:  So we'll have an evidentiary hearing on

6   that.

7           MR. STROJNIK:  Very good.

8       But I want to say, if I can say something else about your

9   intonation to dismiss or to not dismiss the counterclaim.

02:04   10  Your Honor, that counterclaim is based on the original federal

11  claim, the original federal claim I won.  There is no more

12  original federal claim.  There is no more supplemental

13  jurisdiction.  That state court claim is now a freestanding

14  claim.  And it is my belief, and I believe I set it out in my

02:05   15  filings -- it is my belief that the Court no longer has

16  jurisdiction of the matter.

17      As a secondary issue, I've noticed that you have never seen

18  that contract, that settlement agreement.  It was never

19  produced to you.  Insofar as the Court is concerned, we don't

02:05   20  know what it says.  That statement remains as to what it

21  ostensibly says, and I'll tell you one more statement as to

22  what it ostensibly says, and I can show it to you, and it says

23  that any breach of that contract has to be brought in the state

24  court of the State of California.  This is a United States

02:05   25  court, not a state court of the State of California.  So no

1    matter what happens in that case, ultimately it's going to be

2    kicked out because the agreed-upon forum is not this forum.

3    It's the Superior Court of the state of the -- County of

4    San Diego.  So I can produce you a copy of that complaint if

02:06    5    counsel will admit, but, of course, all these contracts have --

6        THE COURT:  I mean, that may be appropriate if you

7    file a motion to dismiss based on that, but all I'm dealing

8    with right now is whether I have jurisdiction, supplemental

9    jurisdiction.

02:06    10        MR. STROJNIK:  Yes.

11        THE COURT:  That's the only issue that you've raised

12    at this point.

13        MR. STROJNIK:  Right.

14        The other thing I want to add, Your Honor, is I don't know

02:06    15    if you saw the ruling of one of your sister courts dismissing

16    the claim in a similar context as this one.  The only reason

17    why I did that was to make sure that we have similar rulings

18    and similar jurisdictions, and as a tester litigant, I can

19    share with Your Honor that there is no common understanding of

02:07    20    these issues among the various courts.

21        THE COURT:  Okay.  Let's set this for an evidentiary

22    hearing on whether you should be declared a vexatious litigant.

23    It's a narrow issue, just so you both understand.  At this

24    point I would only be considering whether Mr. Strojnik made

02:07    25    false allegation in the complaint claiming that he was disabled

1    and unable to access defendant's hotels from his wheelchair

2    when, in fact, he had been videotaped briskly walking without

3    the need of any mobility aids, much less the need for a

4    wheelchair; and second, whether he has suggested he is a lawyer

02:07    5    upon sending demand letters to clients when, in fact, he has

6    been disbarred.  So that would be really the only two issues I

7    would be considering at this point.  It shouldn't be too long.

8        MR. STROJNIK:  Yes, Your Honor.

9    Your Honor, can we engage in limited discovery on these two

02:07    10    issues because what I want to know is where are these letters

11    that I'm sending out?  Where are these letters?

12        THE COURT:  I think it probably would be appropriate

13    to the extent there are videos or -- so that each side knows

14    what the other one -- if Mr. Strojnik has a doctor that he's

02:08    15    planning to call, that he can provide that information to you,

16    and you can provide that information.  It seems appropriate to

17    me.

18        MS. BERMUDEZ:  Yes, Your Honor.

19    Perhaps we could exchange exhibit lists and be required to

02:08    20    meet and confer with that at least a week before?

21    I just wanted to also add, Your Honor, that Mr. Strojnik

22    has heavily burdened the federal courts and particularly the

23    Southern District of California.  In November alone, he's filed

24    seven ADA lawsuits with five of them here in the Southern

02:08    25    District.  So this court, in particular, has a very strong

1    interest in determining whether he's a vexatious litigant or

2    not.

3         THE COURT:  No, and I understand that, but my concern

4    is that simply filing a lot of lawsuits -- and as Mr. Strojnik

02:08   5    points out, even simply filing lawsuits that aren't ultimately

6    successful may not rise to the level of a vexatious litigant.

7    I think it requires something more.  It requires that there be

8    some -- that it be frivolous, the filings be frivolous, that

9    the filings be false, that the filings -- that there's

02:09  10    something -- that they be harassing somehow.  So simply the

11    fact -- I mean, if we only held someone to be a vexatious

12    litigant for filing a lot of lawsuits, we'd have a lot more

13    vexatious litigants that we do because we do have certain

14    people who file a lot of lawsuits.

02:09  15         MS. BERMUDEZ:  And as you know, Your Honor, because a

16    lot of these cases are filed and then quickly settled,

17    defendants oftentimes don't have a pecuniary interest in filing

18    these motions because of the extensive work that's required, so

19    when they are filed, Your Honor, they do merit this kind of

02:09  20    close review because they are doing it on behalf of a district

21    and other similarly situated businesses.

22         THE COURT:  Okay.  What I will do is I will order that

23    there be an exchange of witness names and exhibits two weeks

24    before the evidentiary hearing.  I would like to keep the

02:10  25    evidentiary hearing to a day.  When can we do it?

1    MR. STROJNIK:  I don't have access to my phone.  Can I

2    turn it on?

3         THE COURT:  Sure.

4         MR. STROJNIK:  The burden, of course, is going to be

02:10   5    on the defendant.

6         THE COURT:  We can discuss that, yes.

7      How about February 19th?

8         MR. STROJNIK:  I'll make time.

9         THE COURT:  Okay.  Ms. Bermudez, February 19th?

02:10   10    MS. BERMUDEZ:  I'm sorry, Your Honor?

11         THE COURT:  February 19th.

12         MS. BERMUDEZ:  Yes, Your Honor.

13      If I could also request, Your Honor, that Mr. Strojnik be

14    ordered to produce medical records that he's produced in other

02:11   15    cases as part of the early discovery process.  It's our

16    understanding that he has produced these records in other cases

17    where he's pursued ADA-type complaints.

18         THE COURT:  I need something more specific as far as

19    what you're asking him to produce.  All documents that he's

02:11   20    ever produced in any lawsuit in the past?

21         MS. BERMUDEZ:  Within the last year.

22         MR. STROJNIK:  Ms. Bermudez is not well informed.  I

23    have not produced any documents regarding the disability to

24    anybody, ever.  And the reason for that is, Your Honor, that we

02:11   25    all know what the 2008 amendment says, and we all know what

1   28 CFR 106 says.  It's very clear.  And so these statements

2   that we hear today are not based on any fact.  They're just

3   made up.

4        MS. BERMUDEZ:  And if there is no record of a

02:12  5   disability, we think an independent medical examination would

6   be appropriate to take place before an evidentiary hearing of

7   this nature.

8        MR. STROJNIK:  I will go to an independent medical

9   examination in front of somebody who understands 2008 amendment

02:12  10  and the CFR.

11       THE COURT:  Okay.  How do you want to -- how do you

12  want to design an independent medical examination?

13       MS. BERMUDEZ:  With additional time, Your Honor, we

14  believe we could identify the appropriate consultant -- or

02:12  15  excuse me -- the appropriate expert to conduct an IME.

16       THE COURT:  I'll tell you what.  Why don't you -- if

17  you could provide Mr. Strojnik with the names of three

18  individuals, and he can pick if there's one of those

19  individuals that he prefers, and we'll order an independent

02:12  20  medical examination of those three individuals.  If you could

21  provide those names within -- how soon?

22       MS. BERMUDEZ:  Two weeks, Your Honor.

23       THE COURT:  Within two weeks.

24       MR. STROJNIK:  And I would appreciate those in

02:13  25  Phoenix, Your Honor, because I don't want to travel to

1    San Diego just for that.

2        Also, if I may just throw this out as an idea, which is

3    something that I've discussed with opposing counsel in

4    different cases:  Why don't I just give Ms. Bermudez an

02:13    5    authority to get my medical records directly from the

6    practitioners.  Then she can get somebody to review them and

7    make a decision as to what they say, and then she can have an

8    expert come and testify because I will testify as an expert as

9    to whether that complies with the 2008 or the CFRs.

02:13    10            MS. BERMUDEZ:  And, Your Honor, as of late,

11    Mr. Strojnik has filed dozens and dozens of these lawsuits.  I

12    think an IME is appropriate so that we can get a neutral person

13    to opine on these issues.

14        And to his comment about having it take place in Phoenix, I

02:13    15    believe that the Southern District of California has a strong

16    interest in retaining experts here locally given the volume of

17    cases that are currently pending or have recently been

18    dismissed in the Southern District.

19            THE COURT:  You know, at this point as we're talking

02:14    20    about discovery, I think -- I mean, I'm sort of playing

21    discovery back and forth.  I think -- I mean, I think the

22    defendants have an interest in seeing the medical records that

23    Mr. Strojnik has.  I think Mr. Strojnik has an interest in

24    seeing whatever videotapes or information.  So I think we

02:14    25    should perhaps have a little bit more detailed discovery in

1    this case before we go forward with this evidentiary hearing.

2    I don't know if you want to, you know, ask each other for -- do

3    it more formally than you're doing sort of right now in front

4    of me.  Propound interrogatories or propound discovery

02:15    5    requests.

6              MS. BERMUDEZ:  Perhaps I could meet and confer with

7    Mr. Strojnik, and if there's any areas of dispute, we can bring

8    it to the Court's attention.

9              MR. STROJNIK:  I would prefer propounding discovery on

02:15    10    defendant.  As I had suggested in my response to the vexatious

11    motion, I just need to answer fundamentally on the vexatious

12    motion issue three questions:  Admit that you're aware of no

13    vexatious case; number two, if you don't, produce it; and

14    number three, tell me why it's vexatious.

02:15    15              THE COURT:  Well, that's part of what the case is

16    about.  I don't know that that needs to be discovery that's

17    produced.

18        Do you have medical documents that you plan to introduce at

19    a hearing?

02:15    20              MR. STROJNIK:  No, I will testify to my own condition.

21              THE COURT:  Okay.  I will order an independent medical

22    examiner.  I will order that Ms. Bermudez provide Mr. Strojnik

23    with three names.  My concern is to have Mr. Strojnik come back

24    for the evidentiary hearing and for the medical examination.

02:16    25    If it's possible to do a medical -- I was thinking if it's

1   possible to do the medical examination and the hearing at the

2   same time, but I don't see how that's possible.  I think

3   they're going to require two different trips.

4          MS. BERMUDEZ:  He may have a court appearance in the

02:16  5   Southern District given the volume of cases that he has here

6   and may be required to appear.

7          THE COURT:  I will order that it be in the Southern

8   District of California because I do think it's someone that I

9   would like to have be available to testify here.

02:16  10      So I will order an independent medical examination in the

11  Southern District of California.  I'll order Ms. Bermudez to

12  provide three names to Mr. Strojnik within two weeks.  I will

13  order Mr. Strojnik to pick one of those three within a week

14  after that.  And that will give us three weeks.  Is that going

02:16  15  to be soon enough for February 19th?  That should be.

16         MS. BERMUDEZ:  Yes.

17         MR. STROJNIK:  February 19th.  Yeah, that will be

18  good.

19         THE COURT:  We'll set this for an evidentiary hearing

02:16  20  February 19th at 9:00.

21         MR. STROJNIK:  Thank you, Your Honor.

22         THE COURT:  We'll see you then.

23         MR. STROJNIK:  All right.

24         THE COURT:  Oh, now we need to go to the second case,

02:17  25  case Number 19cv1446, defendant's motion to dismiss, which is

1  ECF Number 8.  The defendant is moving to dismiss Count 4 and

2  to strike the request for attorney's fees, the request for an

3  order of business closure, the request for treble damages and

4  punitive damages.

02:17  5      As a preliminary matter, I will deny the defendant's

6  request for judicial notice since the documents referenced

7  really do not -- I'm not taking them into consideration in my

8  determination of this motion to dismiss.  I don't find it

9  relevant as to the reasons that I'm granting or denying.

02:17  10      With respect to the motion to strike, Rule 12(f) does not

11  authorize district courts to strike claims for damages on the

12  grounds that such claims are precluded as a matter of law.  I'm

13  quoting Whittlestone versus Handi-Craft Company, 618 F.3d 970

14  at 975.

02:18  15      Therefore, for the reasons that I stated in my order

16  denying the motion to strike in the 19cv650 case, I will deny

17  the motion to strike the request for attorney's fees, the

18  request for order of business disclosure, and the request for

19  treble damages.

02:18  20      With respect to the negligence cause of action, Count 4, I

21  agree that the allegations in the first amended complaint are

22  insufficient, and, therefore, I will grant the motion to

23  dismiss under Rule 12(b)(6) and Rule 8.

24      Plaintiff claims he's proceeding on a negligence per se

02:18  25  theory; however, such a theory requires that a violation of the

1 statute proximately caused his injury and his injury was one

2 the statute was designed to protect.  It's not clear from the

3 complaint what injury plaintiff is claiming he suffered that

4 the statute was designed to protect; therefore, I will grant

02:19  5 the motion to dismiss Count 4.  I will deny the motion to

6 strike.  The motion to dismiss would be denied without

7 prejudice.

8     Do you wish to file an amended complaint?  The only thing

9 I'm dismissing is Count 4, and I'm dismissing it without

02:19  10 prejudice.  Do you wish to file an amended complaint or do you

11 want to proceed on the remaining count?

12         MR. STROJNIK:  Yes, ma'am.

13         THE COURT:  You want to file an amended complaint?

14         MR. STROJNIK:  Yes, ma'am.

02:19  15         THE COURT:  I'll order that that be done within two

16 weeks.

17         MR. STROJNIK:  Okay.

18         THE COURT:  Okay.  And that's ECF Number 8, granted in

19 part, denied in part.

02:19  20     And we will see you just then -- I think that's the only

21 thing remaining in the 1446 matter.  We will see you back on an

22 evidentiary hearing on the 650 case.

23         MS. BERMUDEZ:  Thank you.

24         MR. STROJNIK:  Thank you.

02:19  25         THE COURT:  Thank you.

1                               ---oOo---

2

3                    C-E-R-T-I-F-I-C-A-T-I-O-N

4

5        I certify that the foregoing is a correct transcript from

6   the record of proceedings in the above-entitled matter.

7

8        Dated January 2, 2020, at San Diego, California.

9

10
                         /s/ Dana Peabody_____
11                       Dana Peabody,
                         Registered Diplomate Reporter
12                       Certified Realtime Reporter

13

14

15

16

17

18

19

20

21

22

23

24

25